No. 13564

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

MARLYS D. HENDERSON,

                        Plaintiff and Appellant,

    -vs-

KENNETH A. HENDERSON,

                        Defendant and Respondent,

------------------------------------------------------------

DONNA RIPHENBURG,

                        Petitioner,

    -vs-

MARLYS D. HENDERSON,

                        Respondent.

---

Appeal from:  District Court of the Eighth Judicial District,
              Honorable Truman G. Bradford, Judge presiding.

Counsel of Record:

    For Appellant:

        Marra, Wenz & Iwen, Great Falls, Montana
        John Iwen argued and David Hopkins argued, Great Falls,
        Montana

    For Respondent:

        Howard Strause argued, Great Falls, Montana

---

                        Submitted:  April 27, 1977

                        Decided: AUG 23 1977

Filed: AUG 23 1977

_Thomas J. Kearney_____
                        Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The natural mother, Marlys Henderson, appeals from a judgment of the district court, Cascade County, awarding permanent custody and guardianship of her two minor children to their paternal aunt, Donna Riphenburg.

Three issues are raised on appeal:

1. Whether the aunt has standing to bring an action for temporary custody of the children.

2. Whether the aunt can obtain temporary custody without filing a petition or giving notice to the mother.

3. Whether the court can grant permanent custody to the aunt without a showing the mother caused the children to be abused, neglected or dependent.

Three proceedings were consolidated for hearing in the district court and are involved in this appeal. The first proceeding began with the divorce of Marlys and Kenneth Henderson on June 12, 1975. At that time, Marlys received custody of their daughter Jennifer, born March 24, 1972, and Kenneth received custody of their son Joel, born August 11, 1974. In December 1975 Marlys and Kenneth returned to the district court, each seeking custody of both children. They eventually agreed Kenneth would retain custody of Joel and take temporary custody of Jennifer, pending investigation of the question of permanent investigation of the question of permanent custody of both children by the court of conciliation. This proceeding was never concluded because of Kenneth's untimely death in an automobile accident April 2, 1976.

The second proceeding began immediately upon Kenneth's death. Kenneth's attorney appeared that same day before the district court and submitted only an affidavit in support of a proposed order giving Donna Riphenburg, Kenneth's sister, temporary custody of the

children. The court granted the order without giving notice to the natural mother. On April 12, 1976, the aunt filed a petition for appointment as guardian of the children, and without notice to the mother, the court appointed the aunt temporary guardian on April 13, 1976. On April 13, 1976, the mother's attorney was given notice the court would hold a hearing on the guardianship petition.

The third and last proceeding in the district court was commenced by a petition filed by the aunt, June 7, 1976, seeking permanent custody of the children. All three proceedings were tried together July 6, 1976. On July 13, 1976, judgment was entered appointing the aunt guardian of the children and also awarding her permanent custody of the children. One of the reasons for the guardianship proceeding was to allow the aunt to administer the proceeds of a life insurance policy on the father's life on behalf of his children.

The court's granting temporary custody to the aunt without notice to the mother was error. Section 48-331(4), R.C.M. 1947, of the Uniform Marriage and Divorce Act, provides:

> "(4) A child custody proceeding is commenced in the district court:
>
> "(a) by a parent, by filing a petition
>
> "(i) for dissolution or legal separation; ~~or per-~~ *or*
> ~~manently resident or found; or~~
> "(ii) *for custody of the child in the county in which he is permanently resident* or *found; or*
> "(b) by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents." (Emphasis supplied.)

The aunt did not have standing to begin a custody proceeding under section 48-331(4)(b). The aunt argues the requirement that the children not be in the physical custody of one of the parents was met because at the time of the father's death and at the time the aunt picked the children up, they were being cared for by a babysitter. We find no merit to this argument. "Physical custody" is

not limited to having actual, immediate control of the physical presence of the child. Rather, this phrase relates to the custodial rights involved in the care and control of the child. Burge v. City and County of San Francisco, 41 C.2d 608, 262 P.2d 6 (1953). To interpret this phrase otherwise would allow a nonparent to file a petition for custody anytime the child is out of the physical presence of the parent or parents, even if for a few minutes, or under the watchful eyes of an authorized babysitter, as here. It must be emphasized that at the moment of the father's death, the mother, as the surviving parent of the children, automatically assumed the legal right to custody of the children under section 61-105, R.C.M. 1947:

> " * * * If either parent be dead, or unable, or refuse to take the custody, or has abandoned his or her family, the other is entitled to its custody, services, and earnings."

Section 48-333(1), R.C.M. 1947, sets out the procedures for a temporary order of child custody:

> "(1) A party to a custody proceeding may move for a temporary custody order. The motion must be supported by an affidavit as provided in section 48-340. The court may award temporary custody under the standards of section 48-332 after a hearing, or, if there is no objection, solely on the basis of the affidavits." (Emphasis supplied.)

Here, the aunt was not a party to the original custody proceeding, nor did she become one by filing an affidavit after the father's death. Under section 48-331(5), R.C.M. 1947, " * * * The court, upon a showing of good cause, may permit intervention of other interested parties." Nothing in the record suggests, however, that the aunt tried to intervene in the original action before the father's death. Accordingly, after the father's death, the aunt lacked standing in the original proceeding to move for temporary custody.

Finally, section 48-340, R.C.M. 1947, sets out the procedure for submitting affidavits in custody proceedings:

> "A party seeking a temporary custody order or modification of a custody decree shall submit together with his moving papers an affidavit setting forth facts supporting the requested order or modification and shall give notice, together with a copy of his affidavit, to other parties to the proceeding, who may file opposing affidavits. The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits, in which case it shall set a date for hearing on an order to show cause why the requested order or modification should not be granted."

Even if the aunt did have standing to bring the action for temporary custody, under the above statute she failed to follow correct procedures. First, no motion was filed with the affidavit. Second, no notice was given to the mother, who was among "other parties to the proceeding". Third, and most important, the affidavit was deficient because it did not set forth evidentiary facts in support of the requested order. This statute requires the facts to be set out in detail so the court can make an informed decision, but here there was simply no basis upon which the court could determine the aunt should have temporary custody. The affidavit stated in relevant part:

> "That approximately on the 2nd day of April, 1976, Kenneth A. Henderson was killed in an automobile accident. That it would be in the best interests of the children involved for Donna Riphenburg to be granted the temporary care, custody and control of the minor children. That Donna Riphenburg is the sister of Kenneth A. Henderson and is responsible and capable of caring for the needs of said children. That this affidavit is made in support of a Court order directing that Donna Riphenburg be granted the temporary care, custody and control of Joel Henderson and Jennifer Henderson."

This affidavit is devoid of even an attempt to comply with section 48-340. It does not even acknowledge the existence of the children's mother. Under these circumstances the district court had no jurisdiction to grant temporary custody to the aunt.

The dangers of failure to comply with this statute are illustrated by what happened here. Regardless of any deficiency in obtaining temporary custody, the aunt argues the issue is moot since

-5-

a full hearing on the merits of the petition for permanent custody was held on July 6, 1976. We disagree. The transcript on appeal indicates the district judge conducting the hearing on permanent custody mistakenly assumed that another district judge had conducted a hearing and found misconduct on the part of the mother before he awarded temporary custody of the children to the aunt. This temporary custody order in effect created a presumption in favor of the aunt and shifted the burden of proof to the mother, and was in direct violation of section 48-333(1), R.C.M. 1947.

We next discuss the aunt's petition for permanent custody. The petition was filed under the Montana Uniform Marriage and Divorce Act, and the pertinent part of the petition stated:

> "That Donna Riphenburg is a fit and proper person to have the permanent care, custody and control of said minor children. That it would be in the best interests of said minor children to grant their care, custody and control to Donna Riphenburg. That Marlys D. Henderson is not a fit and proper person to have the care, custody and control of said minor children. That during the short time that Marlys D. Henderson had custody of Jennifer Henderson, she did not conduct herself as a proper mother and by her actions indicated that she is not a proper person to be granted custody of said minor children."

To this allegation the mother answered in her affirmative defenses that the petition:

> " * * * contains no allegations, whatsoever, that said minor children are abused, neglected or dependent as defined in Section 10-1301, R.C.M., 1947, and that Section 48-331(d)(4)(b), R.C.M., 1947, requires such a showing before a natural mother can be stripped of her rights to the care, custody and control of her children by an individual who is not a natural parent of said children."

The district court did not directly rule on this affirmative defense and concluded at the end of the hearing that the mother was not a fit and proper person to have custody of her children. We hold the district court should have allowed this affirmative defense and ruled the proper procedure for the aunt to undertake was a separate proceeding under the dependent and neglect statutes, rather

than under the Uniform Marriage and Divorce Act.

The record shows the district court reached its decision on the basis of the "best interest" test set out in section 48-332, R.C.M. 1947, of the Uniform Marriage and Divorce Act, which was not designed to give nonparents the same standards for determining custody of children. The Uniform Code Commissioners' note on this section states in 9 Uniform Laws Annotated, Marriage and Divorce Act, § 401, p. 504:

> " * * * if one of the parents has physical custody
> of the child, a non-parent may not bring an action
> to contest that parent's right to continuing cus-
> tody under the 'best interest of the child' standard
> of Section 402. If a non-parent (a grandparent or
> an aunt or uncle, perhaps) wants to acquire custody,
> he must commence proceedings under the far more
> stringent standards for intervention provided in
> the typical Juvenile Court Act. In short, this sub-
> section has been devised to protect the 'parental
> rights' of custodial parents and to insure that in-
> trusions upon those rights will occur only when the
> care the parent is providing the child falls short
> of the minimum standard imposed by the community at
> large--the standard incorporated in the neglect or
> delinquency definitions of the state's Juvenile
> Court Act." (Parenthetical matter in original.)

This is not a radical departure from existing law. This Court stated 50 years ago in August v. Burns, 79 Mont. 198, 219-220, 255 P. 737 (1927):

> " * * * in a proper proceeding a child may be
> taken from a surviving parent, or from both parents,
> when it appears that such are not proper persons
> to have the custody of the child. However, the
> surviving parent is legally entitled to the custody
> of the children * * * and is required by law to
> support and care for such children * * * and the
> paramount interest of the child, or its wish, will
> not justify the court, in the absence of a showing
> of unfitness or inability to support a child, in
> arbitrarily taking a child from its natural guardian
> and turning it over to a stranger."

Clearly, no petition to take the children away was filed here under the abuse, neglect and dependency statutes. It is important to note the mother was never, either before or after the father's death, declared to be unfit to have the custody of the children. This being so, the district court had no jurisdiction to take the children

-7-

away from their natural mother.

The "best interest of the child" test is correctly used to determine custody rights between natural parents in divorce proceedings. In this situation the "equal rights" to custody which both the father and mother possess under section 61-105, R.C.M. 1947, are weighed in relation to each parent's ability to provide best for the child's physical, mental, and emotional needs upon the breakdown of the marital relationship. "Fitness" of each parent is determined only in relation to the other and not to society as a whole. However, where third parties seek custody, it has long been the law in Montana that the right of the natural parent prevails until a showing of a forfeiture of this right. Ex parte Bourquin, 88 Mont. 118, 290 P. 250 (1930). See also Matter of Fisher, 169 Mont. 254, 545 P.2d 654, 33 St.Rep. 183 (1976). The Uniform Marriage and Divorce Act does not change this law. This forfeiture can result only where the parent's conduct does not meet the minimum standards of the child abuse, neglect and dependency statutes.

The remaining question concerns guardianship. It is clear that the district court appointed the aunt guardian because of its decision on her petition for permanent custody. If the district court would have awarded permanent custody to the mother, we cannot envision the court still would have appointed the aunt guardian of the estates and persons of the children. It stands, therefore, that the guardianship, with one exception, must also be set aside. One of the reasons the aunt petitioned the court to be appointed guardian was so she could administer on behalf of the children the proceeds of a life insurance policy on their father's life. The aunt was named as beneficiary of the policy with the understanding that she administer the money for the children. No good purpose would be achieved in changing the guardianship with regard to the insurance proceeds. Accordingly, the aunt is retained as a limited guardian

-8-

only, to administer the insurance policy proceeds on behalf of the children.

The permanent custody order of the district court is set aside and the children are ordered returned to their mother. This decision is without prejudice to the aunt to start proceedings under Title 10, Chapter 13, Revised Codes of Montana, 1947. The guardianship appointments are also vacated with the exception stated.

This cause is remanded to the district court for further proceedings in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-9-