No. 85-117

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

IN RE THE MATTER OF THE GUARDIANSHIP
OF J. R. G., a minor child.

---

APPEAL FROM:  District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert Holter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Keller & German; Ann C. German, Libby, Montana

For Respondent:

David Harman, Libby, Montana
Sol & Wolfe; Michael Sol, Missoula, Montana

---

Submitted on briefs: July 25, 1985

Decided: October 31, 1985

Filed: OCT 31 1985

Ethel M. Harrison

—————————————————————
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Appellant, Wanda Hill, appeals findings of fact, conclusions of law, and judgment of the District Court, Lincoln County, which granted respondent's petition to terminate appellant's guardianship of respondent's minor child and return custody of the child to respondent.

We uphold the judgment of the District Court though we modify its conclusions of law regarding the scope of guardianship proceedings and consideration of the best interests of the child.

Appellant raises two issues for the Court as follows:

1. Does a natural mother have to prove that the best interests of the child will be furthered by a termination of guardianship in a third party and return of custody to her before the court may issue such an order?

2. Did the trial court err by failing to properly consider the child's best interests in terminating the guardianship and awarding custody of the child to his mother?

A third issue is evident from the parties' briefs and the District Court's conclusions. Specifically, that issue is, "Is a guardianship proceeding a proper means to deny a natural parent return of custody of his or her children?" This issue will be considered in order to properly dispose of the other issues and to clarify the law in future proceedings.

At the hearing for termination of guardianship, no court reporter was available. The parties agreed to proceed with a tape-recorded record. The tape recorder, however, did not function properly and much of the taped testimony was unintelligible. Therefore, the final record comes in large

2

part from a bystander's memorandum prepared from the trial judge's notes. The following facts were derived from that record.

J.R.G. was born November 6, 1979, to Roberta and Ronald Green. At the time of his birth, J.R.G. had a congenital leg bone defect that caused one leg to grow faster than the other. The natural parents' marriage was under severe stress at this time, and the parties separated shortly after his birth. The mother testified at the hearing that, at the time, she was only twenty years old, not employed, had not graduated from high school and was using marijuana and alcohol. She also testified that she had no transportation nor the financial means to provide access to the Shriner's Hospital in Spokane, Washington, for the child's necessary medical care. The natural mother had no source of income and was not receiving child support from the father. For these reasons, the child was put under the care of Roberta's mother, Wanda Hill.

Subsequently, Wanda Hill petitioned for guardianship of J.R.G. Both of the natural parents consented and signed consent to guardianship forms prepared by appellant's attorney which contained the following sentence:

> Believing it to be for the best interests of [J.R.G.], I do hereby give my consent freely and voluntarily to the guardianship, and due to circumstances relinquish all my rights and claim to [J.R.G.].

The petition for guardianship recites in its paragraph 10:

> 10. Petitioner's and the parents' primary purpose in requesting guardianship is to allow Petitioner to be able to consent to medical treatment and operations necessary for the wellbeing of the minor.

The District Court appointed Wanda guardian of J.R.G. on September 14, 1981. The child was not declared dependent or neglected by the court.

On November 23, 1983, the District Court in Missoula County granted a dissolution of marriage of the natural parents and granted custody of J.R.G. to Roberta. Roberta married Mark McKinzie in April 1984. Mark is a journeyman electrician and has been employed continuously over the past few years. Roberta has developed a stable family life with Mark.

J.R.G. was in physical custody of Wanda since shortly after birth until he spent two months during the summer of 1984 with Roberta who had recently married Mark. This summer visitation was arranged between Roberta and Wanda as a trial run after Roberta had expressed her desire to regain custody of J.R.G. in 1983.

There is conflicting testimony regarding J.R.G.'s behavior during the time of the visitation. Wanda testified J.R.G. did not want to stay with Roberta. Roberta and Mark testified J.R.G. did not want to return to Wanda's home. Wanda also testified that a leg growth spurt had occurred during the visitation with Roberta. This spurt, according to Wanda, was unnoticed by Roberta and was not remedied until Wanda took J.R.G. to the Shriner's Hospital at the close of the visit. Roberta said the sudden growth had occurred at the end of the visitation period and that she had advised Wanda of the problem prior to J.R.G.'s returning to Wanda's home. A friend of Roberta testified that she had not noticed any leg problems with the child during her visits to Roberta's household during the summer. Wanda felt that the failure of Roberta to notice the problem indicated a lack of

4

attention on Roberta's part and reenforced her concerns that Roberta was not capable of caring for J.R.G. Thus, Wanda refused to return the child to Roberta's permanent custody.

As a result of Wanda's refusal, on October 4, 1984, Roberta petitioned the District Court to terminate the guardianship. The first hearing on the termination of guardianship was continued at the request of Wanda so that she could bring the natural father into the proceedings. At that time the court awarded visitation to Roberta such that custody was shared by the parties on alternate weeks. The final hearing on termination of guardianship was held December 21, 1984.

The court entered its findings of fact, conclusions of law and judgment terminating the guardianship on January 2, 1985. The order restored the custody of the minor child to the natural mother and directed any litigation regarding custody or visitation between the parents and grandparents be filed with the court having jurisdiction over the dissolution of marriage. Wanda filed an appeal to this Court on January 25, 1985.

I

The threshold issue is whether or not a guardianship proceeding is proper to deny custody to a natural parent. We must deal with this issue because of the trial court's reliance on our holding in Guardianship of Aschenbrenner (1979), 182 Mont. 540, 552, 597 P.2d 1156, 1164, that "a guardianship proceeding is not a proper means to terminate a parent's constitutional right to custody of his or her children." While we adhere to that holding, we do not believe that it is applicable to the instant case.

Aschenbrenner involved a situation where the paternal grandparents attempted to take custody of a minor child away from the natural mother by petitioning the court for award of guardianship to the grandparents. We determined that the mother's parental right of custody had never "been terminated or suspended by circumstances or prior court order" as required by the language of § 72-5-222(1), MCA, before the court may appoint a guardianship. The natural mother still had custody, and guardianship proceedings were improper to terminate that custody. Thus, we were compelled to reverse the District Court's order which had granted guardianship to the grandparents because the proper statutory procedures had not been followed.

The instant case differs from Aschenbrenner because there is already a properly implemented guardianship. Here, the District Court ordered the guardianship to ensure proper medical treatment for J.R.G. There was a hearing, and all interested parties consented. The court determined that the welfare and best interests of the child would be served by the guardianship. We now hold that return of parental rights of custody can properly be denied in termination of guardianship proceedings where the best interest of the child would be served by continuance of the guardianship.

II

We will now consider appellant's contention that a natural mother must prove that the best interests of the child will be furthered by a restoration of custody and termination of guardianship in a third party before the court may so order. The applicable statute is § 72-5-234(1), MCA, which provides:

6

> Any person interested in the welfare of
> a ward or the ward, if 14 or more years
> of age, may petition for removal of a
> guardian on the ground that removal
> would be in the best interest of the
> ward.

Thus, the statute expressly requires the court to consider the best interest of the minor child before terminating a guardianship. However, the trial court in this matter relied on this Court's decision in Henderson v. Henderson (1977), 174 Mont. 1, 568 P.2d 177, to conclude that the "best interests" test is not applicable in the instant case. In Henderson we determined that the District Court had no jurisdiction to take children away from their natural mother absent a showing of abuse, dependency or neglect. Henderson, 568 P.2d at 181. As in Aschenbrenner, Henderson deals with a situation where the third party was seeking to take custody away from a natural parent without the parent's consent. As such, Henderson is unlike and inapplicable to the instant case.

Respondent's brief relies heavily on our holding in Matter of Guardianship of Doney (1977), 174 Mont. 282, 287, 570 P.2d 575, 578, for the proposition that the State is entirely powerless to deprive a natural parent of the custody of his minor children merely because a district judge might feel that a nonparent has more financial resources or preferable lifestyle. Doney, however, although superficially similar, is also distinguishable from the instant case. In Doney we reversed an order of the District Court denying a natural parent's petition to terminate guardianship of his children in a grandparent. However, we found that the order of the District Court in Doney, though couched in temporary custody and temporary guardianship terms, was in reality a permanent custody order. Doney, 570 P.2d at 577. The order

7

deprived the parent of his ability to regain custody of his children because it was based on past occurrences which could never change.

If a District Court were to merely refuse a natural parent's petition to terminate a guardianship because at present the best interests of the child dictate that the guardianship continue, we would not be compelled to reverse the order. In such cases the guardianship would be presumed temporary, Doney, 570 P.2d at 577, and the natural parent could petition the court to regain custody when the circumstances upon which the guardianship was created change.

We now hold that the District Court must consider the best interests of the child as required by § 72-5-234, MCA, when a natural parent petitions to have a properly instituted guardianship terminated and custody returned to the parent. This holding is qualified by the condition that the natural parent retain the ability to regain custody when circumstances change such that the best interests of the child would be served by returning the child to the parent.

Up until this point this decision has ruled in favor of the appellant on the issues of law. We do not, however, agree with appellant that the burden was on the natural mother to prove that the best interests of the child would be furthered by a return of custody to her. On the contrary, the burden was on appellant to prove that the best interest of the child would be served by a continuation of the guardianship. We reach this result because of the presumption in other jurisdictions, and now adopted by this Court, that the best interest of a child is served in custody of natural parents. Hutchinson v. Hutchinson (Utah 1982), 649 P.2d 38,

8

40; Doe v. Doe (1977), 92 Misc.2d 184, 399 N.Y.S.2d 977, 982; Shorty v. Scott (1975), 87 N.M. 490, 535 P.2d 1341, 1344.

## III

Having thus determined that the best interests of the child should have been considered by the District Court, we now turn to the issue of whether there was reversible error in the failure to make that consideration. We hold that there was no reversible error.

The District Court found "no showing of any substantial abuse, dependency or neglect of [J.R.G] by Roberta," and that Roberta's situation "is such that she can care for him and provide for his needs." There is substantial evidence in the record to support those findings. In view of these findings of fact, appellant has not established that the best interest of the child would be served by continuance of the guardianship.

Therefore, the order of the District Court stands and custody of J.R.G. is returned to the natural mother, Roberta.

Chief Justice

We concur:

Justices

9