No.   95-512

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN THE MATTER OF THE ESTATE,
CONSERVATORSHIP,   AND
GUARDIANSHIP OF K.M.,
Kr.O.,  and Ka.O., Minor Children.


APPEAL  FROM:    District Court of the Ninth Judicial District,
                 In and for the County of Toole,
                 The Honorable Marc G. Buyske, Judge presiding.


COUNSEL OF RECORD:

        For  Appellant:

            Robert G. Olson, Frisbee, Moore & Olson, Cut Bank,
            Montana

        For  Respondents:

            John Doubek, Small, Hatch, Doubek & Pyfer, Helena,
            Montana;  Scott  Swanson,  Pendroy,  Montana;  Terryl
            Healy,  Healy,  McKay & Vogel, Cut Bank, Montana

Submitted  on  Briefs:   November 7, 1996

        Decided:   December 17, 1996

FILED

DEC 1 7 1996

Filed: Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

The grandparents of K.M., Kr.O., and Ka.O. appeal the decision of the Ninth Judicial District Court, Toole County, concluding that they lack the necessary standing to move for custody of their grandchildren pursuant to § 40-4-211, MCA. We affirm.

The sole issue presented on appeal is whether the District Court erred in concluding that the grandparents of K.M., Kr.O., and Ka.O. lack the requisite standing to petition for custody of the children pursuant to § 40-4-211, MCA.

The children at issue in this case are the children of Lora, the grandparents' daughter. Lora gave birth to K.M. in 1990. K.M.'s father, Jeff K., initially denied paternity. Once paternity was established, however, Jeff paid court-ordered child support to the Child Support Enforcement Division of the Montana Department of Social and Rehabilitation Services. Although he fulfilled his legal obligation to contribute to the support of K.M., Jeff never exercised his right to visitation with his daughter until after Lora had died and the grandparents had moved for custody of the children. Jeff and Lora were never married.

In 1992, Lora married Thorn 0. That same year, Kr.O. was born. In 1993, Ka.O. was born. The grandparents characterize Thorn and Lora's marriage as "stormy, at best." The couple apparently separated several times for short periods, during which Lora and the children would move back to the grandparents' home until she and Thorn reconciled.

2

In July 1994, Thorn, Lora, and the three children moved to Arkansas, Thorn's home state. In January 1995, Thorn left for California, leaving Lora and the children in Arkansas. The grandparents contended that Thorn abandoned Lora and the children when he left for California; Thorn contended that his move was a precursor to the entire family's relocation, but that he and Lora had agreed that she and the kids should not come to California until he had found work.

Shortly after, Lora moved back to Montana from Arkansas. She and all three children again lived with the grandparents and Lora applied to various Montana colleges. At some point she learned that she had received a grant to attend school in Great Falls. In May, 1995, Lora went down to California, leaving the children with the grandparents. The grandparents contended she was returning Thorn's truck to him and that, by this **time,** the marriage was essentially over. Thorn contended that Lora came down to California to pick him up, and that they planned to move the family to Great Falls while she went to school.

On May 30, 1995, while on their way back to Montana, Lora and Thorn were involved in a car accident and Lora was killed. The children were at their grandparents' home at the **time** of the accident. On June 5, 1995, the grandparents moved for their appointment as temporary guardians of the children, which motion the District Court granted. The grandparents subsequently moved for custody of the children pursuant to § 40-4-211, MCA; both Jeff and Thorn opposed this motion. After a hearing, the District Court

3

concluded that the grandparents did not have standing to move for custody of the children and, accordingly, dismissed their petition. The grandparents appeal.

Following the death of their daughter, the grandparents moved for custody of the children pursuant to § 40-4-211, MCA, which addresses who may institute a child custody proceeding.

Section 40-4-211, MCA, provides in part:

> A child custody proceeding is commenced in the district court . . . by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents.

Section 40-4-211(4)(b), MCA (emphasis added). The grandparents contend that they have standing to move for custody of their three grandchildren because the children were not in the physical custody of their fathers when the petition was filed. Rather, the grandparents contend, the children had been in their physical custody for at least five months before Lora's death.

We reject the grandparents' contention that they had physical custody of the children before Lora's death because the children were living with them. The children were living with Lora, their mother, who happened to live with her parents at that time.

Therefore, it is uncontroverted that Lora had physical custody of all the children and that she never relinquished custody to anyone. Just because the children, the mother, and the grandparents lived in the same household for some months cannot serve to vest the grandparents with any right to custody of the children, any more than sharing a household with any person, be it

4

a boyfriend, relative, or roommate, will somehow create in that person a right to seek custody of the child of another.

The grandparents assert that while they may not have had physical custody, neither did the fathers at the time of Lora's death. The grandparents contend it is the lack of parental custody which gives them standing under § 40-4-211(4)(b), MCA. Again, we disagree.

Physical custody is not limited to actual possession of a child. Rather, the phrase "relates to the custodial rights involved in the care and control of the child." Henderson v. Henderson (1977), 174 Mont. 1, 5, 568 P.2d 177, 179 (citation omitted). In Henderson, this Court equated the right to custody with actual physical custody. In re Marriage of Schultz (1979), 184 Mont. 245, 247, 602 P.2d 595, 596. See also Webb v. Charles (Ariz.App.1980), 611 P.2d 562, 565; In re Custody of Peterson (111.19861, 491 N.E.2d 1150, 1153. When one parent dies, the surviving parent automatically assumes the right to custody of the couple's children. Schultz, 602 P.2d at 596.

Given the automatic transfer of the right to custody from the deceased custodial parent to the surviving parent at the moment of the former's death, a third party must show far more than mere physical possession of the child in order to establish standing under § 40-4-211, MCA. The third party must demonstrate that the surviving parent has voluntarily relinquished his or her right to physical custody and present evidence to show the duration of the

separation between parent and child.'  In re Custody of R.R.K. (1993), 260 Mont. 191, 198, 859 P.2d 998, 1004.

The grandparents argue that Jeff and Thorn both voluntarily relinquished their right to the care and custody of their respective children.  They contend Thorn relinquished his right to custody of Ka.O. and Kr.O. by abandoning Lora and the children in Arkansas when he moved to California.  They contend Jeff relinquished his right to custody of K.M. because he never exercised his right to visitation with her until after Lora's death.

Thorn testified that he left Lora and the children in Arkansas with Lora's agreement and consent.  He claimed that they agreed that he should try to find work in California before sending for her and the children.  He further testified that, far from abandoning the family, he intended to either bring them to California or to rejoin them all in Montana.  This testimony is supported by the fact that he was returning to Montana with Lora when the accident occurred.  While the grandparents challenged his testimony, they did not present evidence sufficient to convincingly prove that he abandoned his children and thereby voluntarily relinquished his right to their custody in the event of their mother's death.

While Jeff did not exercise his right to visitation with his daughter K.M. until after Lora's death, he fulfilled his legal obligation to contribute to her support throughout that time.  The grandparents presented no evidence showing that he voluntarily

6

relinquished his right to K.M.'s custody except for his failure to exercise visitation. That, in and of itself, is insufficient to divest him of his right to parent his child.

As soon as they became aware of the grandparents' petition for custody following Lora's death, both Jeff and Thorn stepped forward and asserted themselves to be ready and willing to care for their children. Because there was no showing that either father had voluntarily relinquished his right to custody of his respective child or children, the grandparents did not have standing to petition for custody pursuant to § 40-4-211, MCA. The decision of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

Justice W. William Leaphart, specially concurring


I concur with the Court's conclusion that the grandparents do not have standing as persons "other than a parent" to petition for adoption under § 40-4-211(4)(b), MCA, since the children, although physically present with the grandparents when their mother died, were nonetheless in the "custody" of their surviving fathers.

In specially concurring, however, I note that respondent Jeff K. argued that § 40-4-221(2)(e), MCA:

> mirrors the previously existing law embodied in Section 40-4-211(4)(b) M.C.A., giving a non-parent similar standing in a non-death situation, "but only if [the child] is not in the physical custody of one of his parents."

Jeff K.'s argument fails to recognize that there is a substantive distinction between §§ -211 and -221 with regard to the standing issue presented in this case. Section 40-4-221, MCA, provides that, upon the death of a parent granted custody of a child, custody passes to the surviving noncustodial parent unless one or more of the parties named in subsection (2) requests a custody hearing. Included in the list of persons who may request a custody hearing is "any other person if that person has actual physical control over the child[.]" Unlike § 40-4-211(4)(b), MCA, which focuses on physical "custody," § 40-4-221(2)(e), MCA, focuses on physical "control." Certainly the grandparents in this matter had physical control of the children. Accordingly, they would have standing to request a custody hearing under § -221. The ultimate decision as to an of award custody under § -221 would be controlled

8

by our recent decision in In re A.R.A. (Mont. 1996), 919 P.2d 388, 392, 53 St.Rep. 543, 545-46.

_____
Justice **Y**


Chief Justice J. A. Turnage and Justice James C. Nelson join in the foregoing special concurrence.


_____
Chief Justice

_____
Justice

December 17, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Robert G. Olson
Frisbee, Moore & Olson
P.O. Box 547
Cut Bank, MT 59427

John Doubek, Esq.
Small, Hatch, Doubek & Pyfer
P.O. Box 236
Helena, MT 59624-0236

Scott Swanson
Attorney at Law
P.O. Box 75
Pendroy, MT 59467-0075

Terryl Healy
Healy, McKay & Vogel
302 E. Main
Cut Bank, MT 59427

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy