JUSTICE LEAPHART,
dissenting.
¶58 I dissent from the Court’s holding that the Girards lack standing.
¶59 The Court holds that this is a custody matter which is controlled by § 40-4-211(4), MCA (1995). Thus, in order for the Girards, as nonnatural parents, to establish standing they have to show that the children were not in the physical custody of one of their parents.
¶60 The Girards argued that Frank’s failure to pay child support for the children supports a determination that Frank voluntarily relinquished his right to physical custody. It is undisputed that Frank did not pay child support for David and Michael either during his incarceration or during the two years between his release from prison and the date of the hearing. Nonetheless, this Court concludes that since § 40-4-211, MCA (1995), does not make reference to lack of child support, it cannot form the basis for a finding of relinquishment of the right to physical custody. The Court’s analysis fails to take into consideration that the requirement that the parent have “relinquished” his right to custody is itself not a specific statutory requirement. The house of cards upon which the Court’s standing analysis is based is rooted in the provisions of § 40-4-211(4)(b), MCA (1995), which grant a nonparent standing to petition for custody “only if [the child] is not in the physical custody of one of his parents.” The statute says nothing about a parent having “relinquished” his or her right to physical custody through lack of support or otherwise.
¶61 It escapes me why, at this juncture, we find it necessary to revert to the precise wording of the statute and focus on the fact that it makes no mention of lack of child support. In addressing the issue of support in the context of custody, I would interpret § 40-4-211(4), MCA (1995), consistently with Title 41, Chapter 3, MCA, which provides that failure to provide for a child’s basic necessities when finan *70 dally able is a basis for a finding that the child is a youth in need of care. I would also interpret it consistently with § 40-8-lll(l)(a)(iv), MCA (1995), which states that failure to provide support for one year excuses a petitioner for adoption from having to obtain the consent of the natural parent. A change in custody is certainly less severe to the natural parent than having the child adopted by another. If lack of support suffices for an adoption proceeding, it should likewise suffice for a custody proceeding. The legislature has said that failure to pay child support supports a finding that the youth is in need of care and also obviates the need to obtain consent of the parent for an adoption. Accordingly I have no problem concluding that failure to support, when able, constitutes voluntary relinquishment as required by our case law or, in the words of the statute, that it constitutes failure to exercise “physical custody.” Section 40-4-211(4)(b), MCA (1995).
¶62 I also dissent from the Court’s holding that, even if lack of support were properly considered, the record would not support a finding of inability to support. Presumably this holding relates back to the Court’s earlier statement that the Girards did not refute Frank’s testimony that he attempted to provide clothing, food and toys for the children, with the assistance of his mother and prison charitable programs, while he was incarcerated. This testimony may be sufficient to explain his lack of support while he was incarcerated, but it does not address his lack of support for the two years after he was released from prison— a period of time during which he had a job and thus was able to make support payments. Accordingly, I find no basis for concluding that “[h]ad financial ability been taken into account, the finding [regarding Frank’s ability to support] would not be supported by substantial evidence and, as a result, would be clearly erroneous.” I would hold that lack of support is a proper consideration under § 40-4-211(b), MCA (1995), and if, as the Court holds, financial ability was not properly taken into account, I would remand for further proceedings and findings in that regard.
¶63 My other concern, which is more substantive, is that the Court has disposed of this matter on the narrow issue of the Girards’ standing to petition for custody without taking into consideration the children’s constitutional right to an established family and whether that right confers standing on the Girards to assert rights on behalf of the “established family.”
¶64 In the final analysis, the Court has made a custody determination after considering the rights of the biological parent but not the *71 rights of the children. This stems, in large part, from our failure to distinguish between the implications of proceedings that seek to terminate parental rights and proceedings that seek to determine custody. For example, in In re A.R.A. (1996), 277 Mont. 66, 919 P.2d 388, we held § 40-4-221, MCA, unconstitutional to the extent that it required a custody dispute initiated by a stepparent be resolved according to the best interest of the child. We reasoned that the statute infringed upon the rights of the natural parent who had not been adjudicated “unfit.” In In re A.R.A., we relied heavily on Matter of Guardianship of Doney (1977), 174 Mont. 282, 570 P.2d 575, which was a case involving termination of parental rights. In Guardinaship ofDoney, we required a showing of abuse or neglect prior to terminating the natural father’s rights as guardian of the children. Guardianship of Doney, 174 Mont. at 287, 570 P.2d at 578. That high standard was appropriate in Guardianship ofDoney because the implications of terminating parental rights are so severe. A custody proceeding is, however, not so harsh as a termination of parental rights and, in the context of a custody proceeding such as this, the Court should not be employing a blind deference to the rights of the biological parent without considering or balancing those rights against the rights of the children.
¶65 In addition to distinguishing between termination and custody proceedings, we should differentiate between cases involving the removal of children from the natural parent’s home and cases involving reunification of children with a natural parent. Thus when the children’s established home is with parties other than the natural parentis), the rights of the natural parent have to be weighed against the children’s rights to the “established family.” By failing to weigh these interests, the Court ignores both the importance of stable family relationships and children’s rights to have such relationships maintained.
¶66 The United States Supreme Court has recognized that the “familial relationship” is more than a mere biological tie:
[T]he importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in “promoting] a way of life” through the instruction of children ... as well as from the fact of blood relationship.
Lehr v. Robertson (1983), 463 U.S. 248, 261, 103 S.Ct. 2985, 2993, 77 L.Ed.2d 614, 626 (alteration in original) (citation omitted).
*72 ¶67 For this reason the Court held in Lehr that when an unwed father demonstrates a full commitment to the responsibilities of parenthood, his interests acquire substantive protection under the Due Process Clause because he has acted as a father toward the children.
The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child’s future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child’s development. If he fails to do so, the Federal Constitution will not automatically compel a State to listen to his opinion of where the child’s best interests lie.
Lehr, 463 U.S. at 262, 103 S.Ct. at 2993-94, 77 L.Ed.2d at 627.
¶68 In Matter of Paternity of Adam (1995), 273 Mont. 351, 903 P.2d 207, we addressed the question of whether to judicially declare the father-child relationship and grant the biological father the prerogatives of a parent. Following the lead of the Court in Lehr, we looked beyond the biological ties, applied a best interest test, and considered “the existence of a home environment; the stability of the present home and family; the extent to which uncertainty of parentage already exists in the child’s mind; the efforts and commitments (if any) that the putative father has taken to establish supportive and financial ties with the child; as well as any other factors which may be relevant in assessing the potential benefits or detriments to the child.” Paternity of Adam, 273 Mont. at 357-58, 903 P.2d at 211. The Paternity of Adam case involved a declaration of paternity, not custody. However, the children’s interest in a home environment and stability are no less compelling in a custody proceeding than in a paternity proceeding. Their rights are, I submit, entitled to constitutional protection under Article II, Section 15 of the Montana Constitution.
¶69 Children’s rights to privacy are protected under the Montana Constitution, Article II, Section 15, and those rights deserve as much, if not more, protection than the privacy rights of the biological parent. One commentator has observed, and I agree, that biological connections are not the exclusive determining factor as to what constitutes a “family.” Heather M. Lationo, Note, Erger v. Askern: Protecting the Biological Parent’s Rights at the Child’s Expense, 58 Mont. L. Rev. 599 (1997). Rather, the importance of family “stems from the emotional attachments that derive from the intimacy of daily association ....” *73 Smith v. Organization of Foster Families (1977), 431 U.S. 816, 844, 97 S.Ct. 2094, 2109, 53 L.Ed.2d 14, 35. Young children, unlike adults, have no psychological conception of relationships by blood ties. See Joseph Goldstein et al., Beyond the Best Interest of the Child 12 (rev. ed. 1979). Conversely, a child’s perception of a parent is shaped by his or her day-to-day needs. See James B. Boskey, The Swamps of Home: A Reconstruction of the Parent-Child, Relationship, 26 U. Tol. L. Rev, 805, 808 (1995).
¶70 The rights of children to maintain healthy nurturing family attachments are no less than the rights of biological parents to raise their children. In In re Baby Boy C, the natural father of a child appealed the grant of a petition for adoption. In re Baby Boy C (D.C. 1993), 630 A.2d 670. The court in Baby Boy C recognized the rights of natural parents to raise their children but concluded that they “are not absolute and must give way before the child’s best interests.” Baby Boy C, 630 A.2d at 682. The Baby Boy C court held that “a finding of parental unfitness is not a constitutional prerequisite to granting an adoption petition notwithstanding lack of parental consent.” Baby Boy C, 630 A.2d at 682. Several other jurisdictions have similarly affirmed the rights of children to supportive family relationships. See In re Adoption No. A91 -71A (Md. 1994), 640 A.2d 1085, 1096 (citation omitted) (holding that “the controlling factor [in] adoption and custody cases is not the natural parent’s interest in raising the child, but rather what best serves the interests of the child”); Matter of Pima Cty. Juv. Severance Action (Ariz. 1994), 876 P.2d 1121, 1136 (holding that “[j]udges must simultaneously protect the parent’s interests and safeguard the child’s stability and security”).
¶71 Although the children in the present case had counsel appointed, their counsel asserted the rights of the children by adopting the position of the Girards. Thus when this Court found that the Girards had no standing, it indirectly held that the children had no standing and that their best interests would not be considered in making the custody determination.
¶72 The Court determines that the Girards have no standing under § 40-4-211, MCA (1995), which grants standing to a nonparent “only if [the child] is not in the physical custody of one of his parents.” Section 40-4-2 ll(4)(b), MCA (1995). In interpreting this statute, this Court has held that “physical custody” does not really mean “physical” custody. Rather it means “custodial rights involved in the care and control of the child.” Henderson v. Henderson (1977), 174 Mont. 1, 5, 568 *74 P.2d 177, 179 (citiation omitted). Beyond that, we have held that a nonparent must demonstrate that the parent has voluntarily relinquished his right to physical custody. See Matter of K.M. (1996), 280 Mont. 256, 260, 929 P.2d 870, 872-73. Although it would seem that a parent would have to have “physical custody” before he or she can “relinquish” physical custody, we give natural parents the benefit of this test despite the fact that they may not, in fact, have exercised any “care and control of the child.”
¶73 I suggest that when the legislature used the term “physical custody,” it was inviting us to make a distinction between: (1) cases in which the child is in the physical custody of the parent and the issue is whether the child will be removed from that custody; and (2) cases in which the child is not in the physical custody of the parent and the parent is seeking to be united or reunited with the child.
¶74 When the children are not in the physical custody of one of their parents, it is incumbent upon the court to determine who does have physical custody of the children and whether the children have established a stable familial relationship with their non-biological parents. If the children have such an established family relationship, I would hold that the children, as well as their surrogate parents, have standing to assert privacy rights to the continuation of that relationship. The biological father seeking reunification has privacy rights as well. However, those rights are not as strong as they would be if he had both legal and “physical” custody and the issue was removal of the children from his established family.
¶75 I would hold that nonpayment of support can constitute voluntary relinquishment of the right to custody under our holding in In re Custody of R.R.K. (1993), 260 Mont. 191, 859 P.2d 998. In the alternative I would hold that children have a constitutionally protected right to an established family and that the Girards, as the parents in the children’s “established” family, with physical custody of the children, have derivative standing under § 40-4-211, MCA (1995), to litigate the issue of custody without having to establish that the biological father’s rights have been terminated.
¶76 This Court’s recent decision in In re A.R.A. (1996), 277 Mont. 66, 919 P.2d 388, relying on Matter of Guardianship of Aschenbrenner (1979), 182 Mont. 540, 597 P.2d 1156, held that a court cannot, in a custody dispute between a biological parent and a third person, employ a “best interest of the child” test absent a termination of parental rights due to a finding of abuse and neglect or dependency. In re *75 A.R.A., 277 Mont. at 72, 919 P.2d at 392. Although I concurred in that decision, upon further reflection I am not convinced that a biological parent who does not have physical custody and whose parental rights have not been terminated should be awarded custodial rights without the court first considering whether the children have established a stable family relationship with surrogate parents and whether a (re)unification with a biological parent would be in their best interests. In re A.R.A. seems to be based upon a premise that the children have no constitutional rights that need to be weighed in the custody process. This is not a valid premise. The children’s right to an established, stable family environment is entitled to as much, if not more, constitutional protection than the biological parent’s right to play his genetic trump card. The biological father certainly has constitutionally protected rights in asserting his parenthood. There is, however, nothing in our constitution which requires that recognition of his rights precludes recognition of any right of the children to their established family. Accordingly, I would overrule the In re A.R.A. and In re Aschenbrenner decisions to the extent that they deny surrogate parents, in the children’s established family, standing to petition for custody unless the parental rights of the natural parent(s) have been terminated.
CHIEF JUSTICE TURNAGE joins in the foregoing dissent.