NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| FIONA P., | ) | |
| | ) | Supreme Court No. S-16301 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 3AN-14-00135/ |
| v. | ) | 00136/00137 CN |
| | ) | |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF HEALTH & SOCIAL SERVICES, | ) | MEMORANDUM OPINION |
| OFFICE OF CHILDREN'S SERVICES, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1616 – February 22, 2017 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Callie Patton Kim, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Jessica L. Srader, Assistant Attorney General, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices. Carney, Justice, dissenting.

## I.    INTRODUCTION

A mother challenges the trial court's decision terminating her parental rights to three children. Because the court's relevant finding is not clearly erroneous and the court correctly applied relevant law, we affirm the termination of the mother's parental rights.

---

\*        Entered under Alaska Appellate Rule 214.

## II. BACKGROUND

Fiona P.[1] has three children who are "Indian children"[2] as defined by the federal Indian Child Welfare Act of 1978 (ICWA).[3] The State of Alaska, Department of Health and Social Services, Office of Children's Services (OCS) petitioned in April 2015 to terminate Fiona's parental rights.

The standards for terminating parental rights are provided in Alaska Child in Need of Aid (CINA) Rule 18; it is governed primarily by Alaska statutes and also by ICWA requirements in the case of an Indian child.[4] After completion of a trial the court

---

[1]     A pseudonym is used for privacy.

[2]     *See* 25 U.S.C. § 1903(4) (2016).

[3]     25 U.S.C. §§ 1901-1963.  ICWA establishes "minimum Federal standards for the removal of Indian children from their families and [for] the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture."  25 U.S.C. § 1902.

[4]     CINA Rule 18(c) (referencing requirements in AS 47.10.011, 47.10.080(o), and 47.10.086 and providing, in the case of Indian children, protocols that comport with ICWA, 25 U.S.C. § 1912(d) and (f)).

Under Alaska CINA Rule 18(c) parental rights to an Indian child may be terminated at trial only if OCS makes certain showings:

OCS must show by clear and convincing evidence that:  (1) the child has been subjected to conduct or conditions enumerated in AS 47.10.011 (relating to abuse, neglect, mental illness, and other harmful conditions); (2) the parent has not remedied the conduct or conditions that place the child at substantial risk of harm or has failed within a reasonable time to remedy the conduct or conditions so that the child would be at substantial risk of physical or mental injury if returned to the parent; and (3) active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family;

OCS must show beyond a reasonable doubt, including qualified expert testimony, that continued custody of the child by the parent is likely to result in serious

(continued...)

found that OCS had met its burden of proof for the termination of Fiona's parental rights.[5] Fiona appeals only one finding underlying the court's decision to terminate her parental rights: the finding that terminating her parental rights was in the children's best interests.

## III.   STANDARD OF REVIEW

"In CINA cases, we review the superior court's factual findings for clear error."[6] "Findings are clearly erroneous if, after reviewing the record in the light most favorable to the prevailing party, we are left with a 'definite and firm conviction that a mistake has been made.' "[7] "When reviewing factual findings . . . we ordinarily will not overturn a trial court's finding based on conflicting evidence,"[8] and "[w]e will not reweigh the evidence when the record provides clear support for the trial court's ruling."[9]

---

[4]     (...continued)
emotional or physical damage to the child; and

OCS must show by a preponderance of the evidence that the child's best interests would be served by termination of parental rights.

[5]     The children's father's parental rights were terminated in the same proceeding; he has not appealed.

[6]     *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1103 (Alaska 2011) (citing *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

[7]     *Maisy W.*, 175 P.3d at 1267 (quoting *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004)).

[8]     *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 79 P.3d 50, 53 (Alaska 2003) (citing *In re Friedman*, 23 P.3d 620, 625 (Alaska 2001)).

[9]     *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 214 (Alaska 2000) (citing *A.M. v. State*, 891 P.2d 815, 825 (Alaska 1995)).

"[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[10]

## IV. DISCUSSION

The trial court relied primarily on Fiona's "long history of narcotic abuse including not being able to remain sober even after completing treatment" to find clear and convincing evidence that the children were in need of aid. The court found that "even if [Fiona] were sober today, of which there is strong evidence to the contrary, [Fiona is] currently and will likely be in the future[] unable to remain sober and unable to put [her] children's needs ahead of [her] own." The court also found that Fiona had neither seen her children in over six months nor "made meaningful efforts to work [her] case plan." The court found that Fiona "evidenced a willful disregard for [her] parental obligations" and "neglected [her] children by failing to provide the care and control necessary for the children's[] physical and mental health and development." The court found clear and convincing evidence that OCS "made efforts well beyond the legal standard of active efforts." The court — stating that the situation is "not even staying neutral" but instead is "getting worse" — also found clear and convincing evidence that Fiona has "not remedied the conduct or conditions . . . that put the children at substantial risk of harm." And the court found "beyond a reasonable doubt that the return of the children to [Fiona] is likely to result in serious emotional and/or physical damage to the children." Fiona disputes none of these findings.

Fiona instead first argues that the trial court erred as a matter of law by terminating her parental rights before deciding whether a guardianship or an adoption was in her children's best interests; underlying this argument is the notion that if a

---

[10]    *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001) (quoting *Knutson v. Knutson*, 973 P.2d 596, 599-600 (Alaska 1999)).

guardianship were in the children's best interests, her parental rights would not need termination. But we have never expressed such a legal requirement,[11] and in this case the trial court's findings make clear that the ultimate placement was not critical to its termination decision. The record reflects that the trial court explicitly considered the

---

[11] Trial courts may consider any fact when making a best interests finding. AS 47.10.088(b) states that:

> court[s] may consider any fact relating to the best interests of the child[ren], including
>
> > (1)  the likelihood of returning the child[ren] to the parent within a reasonable time based on the child[ren]'s age or needs;
> >
> > (2)  the amount of effort by the parent to remedy the conduct or the conditions in the home;
> >
> > (3)  the harm caused to the child[ren];
> >
> > (4)  the likelihood that the harmful conduct will continue; and
> >
> > (5)  the history of conduct by or conditions created by the parent.

With respect to permanent placement, we have held that a trial court "*may* consider the presence or lack of favorable present placements." *Casey K. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 311 P.3d 637, 647 (Alaska 2013) (emphasis added) (citing *Sean B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 251 P.3d 330, 339 (Alaska 2011)). But we have never required a trial court to consider guardianship as an alternative to terminating a parent's rights. *A.J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 62 P.3d 609, 614 (Alaska 2003) ("The superior court was not required to consider the less drastic alternative of guardianship in a termination proceeding."); *see also Grace L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 329 P.3d 980, 987 (Alaska 2014) ("The law does not require the superior court to consider a guardianship in the context of a termination proceeding, except to the extent that the statute requires the court to consider the child's best interests." (citing *Thea G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 291 P.3d 957, 968 (Alaska 2013))).

possibility of a guardianship and determined that it was in the children's best interests to terminate Fiona's parental rights regardless of the children's eventual placement. The court stated that it is "in the best interests to terminate [Fiona's] parental rights . . . so that the children are legally free, and that may be in guardianship or adoption," and emphasized that "the children need to be legally free of [Fiona] . . . so that they can move forward with a clear understanding of what their future might be and that it's not going to revert back to what it has been for so many years." Because the court determined it was important for the children to be "legally free" from Fiona, which could be achieved only through termination, we hold that the trial court did not commit legal error by terminating Fiona's parental rights before deciding whether a guardianship or an adoption was in her children's best interests.[12]

We also reject Fiona's second contention that there was insufficient evidence presented for the trial court to make its best interests determination. Even a cursory review shows that evidence in the record adequately supports the court's determination that the children needed to be legally free from Fiona. As examples, the record reflects that Fiona has struggled with narcotic abuse since 2009 and that she has acted "erratically" and appeared "under the influence of some type of drug while caring for her children"; she repeatedly failed to get recommended substance abuse assessments and attend parenting classes, even when free transportation was provided to her. Finally, the record reflects that Fiona has neglected her children and, because her conduct is

_____

[12]     On this same reasoning we also disagree with the dissent's contention that the trial court abused its discretion by terminating Fiona's parental rights without first examining whether it was necessary for the children's permanent placement. The trial court *did* examine this issue and found that it was in the children's best interests that Fiona's parental rights be terminated without regard to the ultimate placement decision, whether that be guardianship or adoption. The issue properly before us, and discussed next, is whether the trial court's best interests finding can be affirmed.

worsening, she likely will continue to relapse and remain unable to meet her children's needs. Given Fiona's past and worsening conduct and the children's need for permanency,[13] the court's finding that it was in the children's best interests to terminate Fiona's parental rights regardless of the ultimate placement decision — freeing them from Fiona to move forward with their lives knowing their living situation would not revert to the neglect they had been living with for so long — does not leave us with a definite and firm conviction that a mistake has been made.[14] We therefore affirm the trial court's best interests finding.[15]

---

[13]    *See Casey K.*, 311 P.3d at 647-49 (upholding trial court decision terminating parental rights because the child in need of aid "needed permanency"); *Dashiell R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 222 P.3d 841, 850-51 (Alaska 2009) (affirming trial court decision terminating parental rights "because the court found the need for a permanent, stable relationship"); *see also Jenny S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-15609, 2015 WL 507054, at *4 (Alaska Feb. 4, 2015) (rejecting argument that trial court erred by concluding legal guardianships are more easily dissolved than adoptions).

[14]    *Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 933 (Alaska 2012) ("Merely because the superior court reached a different conclusion than [the parent] does not constitute legal error.").

[15]    The dissent's disagreement with the trial court's best interests finding — that it was in the children's best interests to be legally free from Fiona regardless of the ultimate permanent placement — seems not really to be that it is clearly erroneous, but rather that it might be clearly erroneous and "possibly unnecessary" with respect to a potential guardianship. In effect the dissent would impose a new legal obligation on trial courts when making a best interests finding:  delay termination while inquiring into potential permanent guardianship placements and then — if a permanent guardianship placement actually is effected — determine whether termination of parental rights actually is necessary. *Cf. supra* note 11.  This seems impractical for most cases and, as framed throughout the dissent, improperly focuses on parents' best interests rather than children's. *Cf. Hannah B.*, 289 P.3d at 932 ("In a termination trial the best interests of the child, not those of the parents, are paramount." (quoting *Kent V. v. State, Dep't of*

(continued...)

## V.    CONCLUSION

We AFFIRM the termination of Fiona's parental rights.

---

**15**    (...continued)
*Health & Soc. Servs.*, 233 P.3d 597, 601 (Alaska 2010))).

CARNEY, Justice, dissenting.

The trial court correctly found by clear and convincing evidence that Fiona's children were in need of aid; that the Office of Children's Services (OCS) had made efforts beyond the legal standard for active efforts; and that Fiona had not remedied the conduct that put her children at risk. And there was evidence beyond a reasonable doubt that returning the children to her was likely to result in serious emotional and/or physical damage to them.

I believe, however, that in this case the court acted prematurely in terminating Fiona's parental rights when it decided that termination was in the children's best interests without first examining whether guardianship, instead of adoption, might be in their best interests. When we review a child in need of aid (CINA) case, "[w]e bear in mind at all times that termination of parental rights is 'a drastic measure.' "[1] In Fiona's case, where the children were in a stable relative placement and the trial court itself noted that "it's premature to make a decision on whether it's going to be a guardianship . . . or adoption" for her children, it was an abuse of discretion to take this drastic measure without first examining whether it was necessary for the children's best interests or to ensure their permanent placement.

A court must consider guardianship "to the extent that the [termination] statute requires [it] to order an arrangement that is in the child[ren]'s best interest[s]."[2] "In making . . . [its] determination . . . the court may consider *any fact* relating to the best

---

[1]     *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 79 P.3d 50, 53 (Alaska 2003) (quoting *R.J.M. v. State*, 946 P.2d 855, 861 (Alaska 1997) (*superseded on other grounds by statute*, ch. 99, § 1, SLA 1998)).

[2]     *C.W. v. State*, 23 P.3d 52, 57 (Alaska 2001); *see also Grace L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 329 P.3d 980, 987 (Alaska 2014) (citing *Thea G. v. State, Dep't of Health & Soc. Servs.*, 291 P.3d 957, 968 (Alaska 2013)).

interests of the child[ren] . . . ."[3]  The children's need for permanence and stability is an important factor in the court's consideration of best interests.[4]

But permanence and termination of parental rights are not synonymous, nor does permanence always require termination of parental rights.  Child in Need of Aid Rule 17.2 governs permanency hearings, which are required in each CINA case "within 12 months after the date the child entered foster care."[5]  The rule sets forth various options for permanence for the child, including adoption, legal guardianship, and "another planned, permanent living arrangement," and it instructs the court to schedule another hearing within a reasonable time if it is unable to make a required finding under this section.[6]  Guardianship can be an appropriate permanent placement — depending on the best interests of the particular children.[7]

In this case, guardianship might provide the permanence and safety Fiona's children need, without requiring termination of her parental rights.[8]  The State offered

---

[3]     AS 47.10.088(b) (emphasis added).

[4]     *See Casey K. v. State, Dep't of Soc. Servs., Office of Children's Servs.*, 311 P.3d 637, 647-49 (Alaska 2013); *Dashiell R. v. State, Dep't of Soc. Servs., Office of Children's Servs.*, 222 P.3d 841, 850-51 (Alaska 2009).

[5]     CINA Rule 17.2(a).

[6]     CINA Rule 17.2(e).

[7]     *See Thea G.,* 291 P.3d at 971-72 (Carpeneti, J., dissenting) (arguing that the court should have considered the best interests of the particular children involved, and that those best interests may involve other options besides termination).

[8]     Although in a recent unreported case we acknowledged the reality that "legal guardianships are more easily dissolved than an adoption," *Jenny S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-15609, 2015 WL 507054, at *4 (Alaska Feb. 4, 2015), it does not follow that it is actually easy to dissolve a
                                                                    (continued...)

the testimony of a social worker that the children's foster parents were "waiting essentially for the children to be legally free" and urged the court to terminate parental rights in order to achieve permanency for the children. But Fiona's attorney presented evidence that guardianships were culturally appropriate and common among Athabascan families and that the director of OCS had publicly embraced guardianships as a "valuable, appropriate, and relevant goal for many families," including for young children. Here, the foster parents were committed to keeping the children permanently and were maintaining the children's contact and relationship with their parents (as long as the parents were sober and behaved appropriately). In doing so, the foster parents were able to provide the safe, permanent, culturally appropriate home that the children need without the legal barrier of termination and its potentially alienating impact on the ongoing, but carefully controlled, relationship that they had maintained for the children with their parents.

The superior court found that Fiona is unfit and that her children are in need of aid. But in determining whether the children's best interests would be served by termination of her parental rights, the court, despite the evidence before it, did not consider whether those interests could be satisfied by the less drastic measure of

---

**8**      (...continued)
guardianship. Alaska Statute 13.26.085(a) allows for the removal of a minor's guardian in the minor's best interests, but no reported cases illustrate how that process actually works. Nor are there many cases from other states with similar statutes. Most of these cases are contests between a guardian and a parent of the child at issue, where the guardianship was voluntary and the parent had not been adjudicated unfit; each state, like Alaska, presumes that it is in a child's best interests to be in the custody of her or his fit parent. *See In re Guardianship of J.R.G.*, 708 P.2d 263, 266-67 (Mont. 1985); *In re Guardianship of D.J.*, 682 N.W.2d 238, 246 (Neb. 2004); *In re Guardianship of Barros*, 701 N.W.2d 402, 409 (N.D. 2005); *see also Evans v. McTaggart*, 88 P.3d 1078, 1085 (Alaska 2004) (holding that, in the custody context, a third party must "overcome the parental preference" in order to gain custody of a child).

guardianship with their foster parents. The foster parents are Fiona's sister and her husband. They affirmed their permanent commitment to the children. Given the enduring nature of guardianship,[9] the foster parents' commitment to keeping the children permanently,[10] and the absence of evidence regarding whether termination of Fiona's rights would enhance that permanency or undermine it,[11] I believe that the trial court erred in finding that termination was in the best interests of the children and making the irrevocable, and possibly unnecessary, decision to terminate parental rights. The court's own acknowledgment that it would be "premature" to decide between guardianship and adoption supports this belief.

In a case such as this, where the court has credible evidence that a guardianship could provide the children with permanency and stability, I believe that the court should consider such evidence before deciding that termination is in the children's

---

[9] The parents' failure to appear for the termination trial seems to indicate a diminished risk that they would undermine the guardianship's permanency by seeking removal of the guardians.

[10] In contrast, in *Jenny S.* the proposed guardian testified that she hoped to return the children to their mother if she convinced the guardian of her improved ability to raise them. 2015 WL 507054, at *2.

[11] The *Jenny S.* court also made detailed findings regarding its careful consideration of the best interests of those particular children. 2015 WL 507054, at *2-3. The court here simply stated that termination was in the children's best interests so that they could be legally free whether "that may be in guardianship or adoption." And it did not consider whether termination might upset the existing relationship between the parents and the guardians, thereby reducing the children's sense of stability and permanency rather than adding to it.

best interests and taking the drastic step of terminating parental rights. The court's failure to do so in this case was an abuse of discretion.[12] I therefore respectfully dissent.

---

[12] The court notes that it would be "impractical for most cases" for a court to inquire whether a potential guardianship might be in the children's best interests in lieu of termination of parental rights and eventual adoption. I agree. But in cases such as this, where a successful, long-term placement has been proposed as guardian for the children, it is in the children's best interests to explore whether it would meet the children's need for permanency.